IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MIGUEL ANGEL RANGEL, <br><br> Defendant. | Case No. 13-cr-00443-DKW-3 <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 88 months into his 135-month sentence, Miguel Angel Rangel ("Defendant") asks the Court to reduce his sentence to time served because his medical conditions, coupled with the COVID-19 pandemic, present extraordinary and compelling circumstances warranting such a reduction. For the reasons set forth below, the Court disagrees, and the motion is DENIED.

## RELEVANT BACKGROUND

On March 4, 2014, Defendant pled guilty to methamphetamine distribution-related offenses. Dkt. Nos. 70, 73, 133. On September 30, 2015, the Court sentenced Defendant to 135 months imprisonment and five years of supervised release. Dkt. No. 36. The Court imposed a sentence far below the guideline range (210–262 months) because of Defendant's substantial assistance to the Government in securing the conviction of a leader in the drug distribution conspiracy in which he participated. Dkt. No. 135; *see also* Dkt. No.132 at 28–31.

On September 15, 2020, Defendant filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion"). Dkt. No. 173. Defendant argues his medical conditions—obesity, type 2 diabetes, and hypertension—in light of the COVID-19 pandemic present extraordinary and compelling reasons warranting release.[1]  *Id.* On September 24, 2020, the Government filed a response opposing any sentence reduction, Dkt. No. 179, to which Defendant replied on October 7, 2020, Dkt. No. 180.

This order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

---

[1] Defendant has asked the Court to "reduce his sentence to time served *and convert the remainder of his sentence to a period of home confinement*." Dkt. No. 173-1 at 1 (emphasis added). While this Court has discretion to reduce an inmate's sentence (to time served or otherwise) pursuant to 18 U.S.C. § 3582, it does not have the discretion to determine inmate placement while he serves his sentence. Inmate housing determinations are made by the Bureau of Prisons ("BOP"). The Court could, however, impose a home confinement condition as a part of Defendant's supervised release obligation.

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the [BOP] to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## **DISCUSSION**

The parties dispute only the second and third requirements detailed above.[2] As explained below, Defendant fails to demonstrate an extraordinary and compelling

---

[2] In other words, the Government concedes exhaustion. Dkt. No. 179 at 4.

reason justifying a sentence reduction and, even if he did, the Court finds the sentencing factors at 18 U.S.C. § 3553(a) weigh against such a reduction.

## I. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission"). As this Court has explained, it is bound by the Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an "extraordinary and compelling" reason warranting a sentence reduction. *See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*4 (D. Haw. July 17, 2020).[3]

Accordingly, the Court applies the following framework to determine whether COVID-19 presents extraordinary and compelling reasons to grant a reduction in sentence:

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional

---

[3] Defendant's argument to the contrary, that this Court may independently determine what "other reasons" constitute "extraordinary and compelling" reasons warranting a sentence reduction, *see* Dkt. No. 173-1 at 3–4, was discussed at length and expressly rejected in *Aruda*. 2020 WL 4043496, at *2–5; *see also United States v. Carpenter*, 816 Fed. Appx. 159, 159–60 (9th Cir. 2020) (citing the Commission's policy statement in finding the defendant failed to meet his burden of showing an extraordinary and compelling reason warranting release).

4

>facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *7 (D. Haw. July 1, 2020) (alterations in original) (quoting U.S.S.G. §1B1.13 n.1(A)). Defendant fails on the last two elements.

The Court recognizes Defendant's medical records show he is obese and suffers from type 2 diabetes and hypertension. Dkt. No. 178 at 5–7; *see also* Dkt. No. 180 at 2 n.1 (listing Defendant's body mass index ("BMI") as 45.9). Thus, Defendant has medical conditions recognized by the CDC as placing him at greater risk of having a severe reaction to COVID-19.[4]

But as the Court has often explained, demonstrating a high risk of becoming seriously ill from COVID-19 requires showing not only that a defendant is a member of an at-risk group, but also that there is "a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where [the defendant] is housed." *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020).[5] Defendant must explain

---

[4]*See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (updated Oct. 6, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 8, 2020) (listing those with BMIs of 30 or higher and those with type 2 diabetes as having an increased risk of severe illness if they contract COVID-19; listing those with hypertension as possibly having an increased risk).

[5]As the Government points out, Dkt. No. 179 at 6–8, this Court is not alone in requiring a defendant to produce evidence that the number of COVID-19 cases at his facility creates a high

5

how the *current* circumstances at *his facility* indicate a high likelihood of contracting the virus.

The Court recognizes that there was—at one time—a significant outbreak of COVID-19 at USP Lompoc.[6]  BOP reports that since testing began, 141 inmates have tested positive, and two inmates have died from COVID-19-related complications.[7]  But since the initial outbreak, it appears BOP has significantly contained the spread of the virus.  Currently, **no inmates** and just four staff are testing positive.[8]  Defendant's potential exposure is further limited because he is at the facility only four days each week.  Dkt. No. 173-1 at 13–14.  Of course, this does not mean Defendant's housing conditions present no risk.  Indeed, the risk of infection at his facility may be more than nominal.  But Defendant is tasked with presenting "extraordinary and compelling" reasons for this Court to effectively reduce his sentence by several years.  These facts simply fail to meet that bar.[9]

---

risk of contracting the virus.  *See, e.g.*, *United States v. Williams*, 2020 WL 4586860 at *3 (D. Haw. Aug. 10, 2020).

[6]USP Lompoc is a medium security complex with low security satellite camps nearby.  *USP LOMPOC*, BOP, https://www.bop.gov/locations/institutions/lom/ (last visited Oct. 8, 2020).  Defendant is housed at the north satellite camp.  Dkt. No. 173-1 at 10.

[7]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2020). On this public website containing the coronavirus-related data for BOP facilities, the BOP notes that it "update[s] the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m." *Id.*

[8]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2020).

[9]Defendant points to an Office of the Inspector General report detailing the early failures of USP Lompoc in responding to the pandemic as evidence the facility is currently unsafe.  Dkt. No. 173-1 at 8–9 (referencing *Pandemic Response Report: Remote Inspection of Federal Correction Complex Lompoc,* Department of Justice Office of the Inspector General, Report No. 20-086

Moreover, even if there was a more significant risk of Defendant contracting the virus at USP Lompoc, he has failed to demonstrate that, should he contract the virus, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and he would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A).  Merely having medical conditions that create a higher risk of a severe reaction to the virus is insufficient to meet this requirement. Defendant must offer *specific factual allegations* unique to his place and circumstance showing how, should he contract the virus, he could not provide self-care at his facility.  He has failed to do so.  *See generally* Dkt. No. 173-1.

Regarding the expectation of recovery, Defendant appears to argue that shortages of medical personnel at USP Lompoc is evidence the facility is ill-equipped to treat him should he contract the virus.  Dkt. No. 173-1 at 9.  But there is direct evidence refuting the inference Defendant urges the Court to make.  While two inmates died at the facility from COVID-19-related complications from April 18, 2020 to May 7, 2020, there have been no COVID-19-related inmate deaths at USP Lompoc since.[10]  Even if it were true that USP Lompoc was suffering a shortage of medical personnel, that there have been no COVID-19-related deaths

---

(July 2020) https://oig.justice.gov/sites/default/files/reports/20-086.pdf).  While the report details past failures, it is not evidence of the current conditions at the facility.  If the report provides any evidence of current conditions, it, along with the reduction in active cases at the facility, suggests the Government has tightened its CDC guideline compliance efforts.

[10] *See* Press Releases, BOP, https://www.bop.gov/resources/press_releases.jsp (last visited Oct. 8, 2020).

7

in more than five months is evidence that the facility has enhanced its ability to treat inmates as they become infected. Certainly, Defendant has presented no evidence to the contrary.

Because Defendant has not carried his burden of showing that there are "extraordinary and compelling reasons" justifying his early release under 18 U.S.C. § 3582(c)(1), he is not entitled to a sentence reduction.

## II. Section 3553(a) Factors & Risk of Danger to the Community

Even assuming, *arguendo*, that Defendant established an extraordinary and compelling reason justifying a sentence reduction, the Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Defendant is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." *See* 18 U.S.C. §3582(c)(1)(A); U.S.S.G. § 1B1.13.

Considering the Section 3553(a) factors, the Court finds Defendant's 135-month sentence is, as it was at sentencing, "sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public." *See* 18 U.S.C. §3553(a)(2). Defendant's sentence was significantly below the guideline range due to his substantial assistance to the Government in convicting a leader of the

drug distribution conspiracy in which he participated. But Defendant's conduct as part of that conspiracy was of a grave and menacing nature. Not only was Defendant found to have conspired to possess and distribute over fifty pounds of methamphetamine, his home upon police search revealed over $113,000 in currency and thirteen firearms, some loaded and some unregistered. Dkt. No. 132 at 10–11. Having Defendant serve anything less than his full sentence would not be just punishment for this deeply concerning conduct.

Finally, as evidence he does not pose a danger to the community, Defendant cites his placement in a low security satellite camp and his delivery job, which allows him to travel independently outside of Lompoc several days a week. Dkt. No. 173–1 at 13–15. While the Court acknowledges the BOP's apparent assessment of Defendant's low security threat and appreciates that Defendant has been law- abiding in the execution of his delivery duties over the past several years, the Court cannot conclude that this limited evidence of Defendant's post-sentencing rehabilitation is sufficient to outweigh the reasons set forth above for Defendant's initial sentence or for altering that sentence now.

## **CONCLUSION**

For the reasons set forth herein, Defendant's motion for compassionate release, Dkt. No. 173, is DENIED.

IT IS SO ORDERED.

DATED: October 9, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*United States v. Miguel Angel Rangel*, No. 13-CR-00443-DKW, **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**